## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 02 2018, 9:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
Paul J. Podlejski
Anderson, Indiana

ATTORNEYS FOR APPELLEE
Curtis T. Hill, Jr.
Attorney General

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Thomas N. Hite III, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff* | August 2, 2018 <br><br> Court of Appeals Case No. <br> 48A02-1712-CR-2947 <br><br> Appeal from the Madison Circuit Court <br><br> The Honorable David A. Happe, Judge <br><br> Trial Court Cause No. <br> 48C04-1702-F5-540 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Thomas N. Hite III appeals his convictions for domestic battery and battery, arguing that his convictions constitute double jeopardy under Indiana's actual-evidence test. Because Hite caused injury to multiple victims, his convictions do not violate the actual-evidence test. Hite also argues, and the State concedes, that the trial court erred when it sentenced him. Accordingly, we affirm in part and remand in part.

# Facts and Procedural History

[2] One night in February 2017, Hite visited his ex-girlfriend, Elisha Bouge, at her parents' house in Madison County. Elisha was house sitting for her parents and had her three-year-old daughter, K.E., with her. When Hite arrived at the house, he was "stumbling, falling, [and] slurring his words." Tr. Vol. III p. 54. Elisha recognized that Hite was "extremely intoxicated" and took him to her parents' room so he wouldn't wake up K.E. Attempting to help Hite sober up, Elisha made him waffles, but Hite "passed out face first . . . in the waffles[.]" *Id.* at 55, 56. Elisha was able to wake up Hite, suggested he find another place to go for the night, and stated that she would take him there.

[3] Shortly thereafter, Hite became "irate" and "angry" and began "screaming" at Elisha. *Id.* at 56. He grabbed Elisha by her throat and slammed her down on the bed, placed his face on her face, called her names, and told her that "he didn't have to leave if he didn't want to [and] there wasn't anything [she] was

gonna do about it." *Id.* at 57. Hite got off Elisha, stood back up, and resumed yelling and cursing at her. Elisha got off the bed and "that's when it turned really bad and he started full blown swinging" at her. *Id.* at 59. Elisha fell backwards, and Hite stood over her hitting her with both arms. Elisha begged him to stop hitting her, but Hite continued to punch her, landing blows to the side of her head, the back of her head, and her arms. Hite hit her four or five times before Elisha was able to stand up.

[4] Elisha ran for the bedroom door to escape Hite and to console K.E., who was awake and crying in the living room by this point. Before she could leave the bedroom, Hite grabbed Elisha by her hair "and tried to pull [her] back." *Id.* at 61. Elisha was able to escape for a second time and made it to the living room; she picked up K.E. and tried to calm her down. Hite then pulled out his phone and began "messing" with it. *Id.* Elisha saw her purse, which had her phone and car keys in it, sitting on the kitchen counter and walked into the kitchen. Hite followed them into the kitchen and told Elisha that he would kill her if she tried to call the police. Elisha, still holding K.E., begged him to stop, but Hite hit her again. Elisha's "knees buckled," and the next thing she remembered was waking up on the kitchen floor next to K.E. *Id.* at 62. K.E., who was crying and shaking, had a large mark on her forehead that was not there before Elisha was knocked unconscious. Elisha also noticed that her mouth hurt and that her two front teeth felt "loose." *Id.* at 72.

[5] Elisha took K.E. back to the living room to try and calm her down. Hite walked into the living room carrying a crossbow he had found in the house. He

told Elisha that he was going to kill her and that K.E. "could play in [her] blood." *Id.* at 64. Elisha managed to convince Hite to put down the crossbow and to take her and K.E. to her cousin's house. She promised Hite that if he took K.E. to the cousin's house that she would accompany him anywhere he wanted to go. Hite agreed to take K.E. to the cousin's house, and they arrived there around four in the morning. Elisha immediately took K.E. to her cousin's bedroom while Hite waited in the living room. Elisha, whose face was covered in dried blood, told her cousin's fiancé, who was also at the house, that Hite had hurt her and K.E. The fiancé then forced Hite to leave.

[6]     The State charged Hite with seven counts: Count I, Level 5 felony domestic battery of Elisha resulting in serious bodily injury; Count II, Level 6 felony strangulation of Elisha; Count III, Level 6 felony domestic battery of Elisha; Count IV, Level 6 felony intimidation of Elisha to stop her from "reporting [Hite's] actions to police"; Count V, Class A misdemeanor interference with the reporting of a crime by preventing Elisha from calling 911; Count VI, Class A misdemeanor invasion of privacy by calling Elisha while in jail and violating a no-contact order; and Count VII, Level 5 felony battery of K.E., a person under fourteen years old, resulting in bodily injury.[1] Appellant's App. Vol. II pp. 118-121. The State also alleged that Hite is a habitual offender. *Id.* at 27. A two-

---

[1] In order to prove serious bodily injury, the State argued during closing arguments, "Broken bones, unconsciousness, pain, loose teeth. That's serious bodily injury." Tr. Vol. III p. 237. The court instructed the jury that "A tooth is a bodily member or organ for determining serious bodily injury as defined in Indiana Code 35-31.5-2-292." Appellant's App. Vol. II p. 142. It is undisputed that the punch that caused Elisha's teeth to feel loose was the same punch that caused the large mark on K.E.'s forehead.

day jury trial was held in October 2017. On the first day of trial, the State dismissed Count VI, and the trial court renumbered Count VII as Count VI. The jury found Hite guilty of Counts I, III, IV, and VI, but not guilty of Counts II (strangulation) and V (interference with the reporting of a crime). The jury also found that Hite is a habitual offender.

[7] At sentencing, the trial court found no mitigators and multiple aggravators, including Hite's criminal history, the fact that Hite had been convicted of crimes against Elisha in the past, and that there were multiple victims in this case. Due to double-jeopardy concerns, the trial court merged Count III (Level 6 felony domestic battery) into Count I (Level 5 felony domestic battery resulting in serious bodily injury). The court then sentenced Hite to five years on Count I, enhanced by four years for being a habitual offender, two years on Count IV, and five years on Count VI. Hite's sentences were ordered to run consecutive to one another for a total of sixteen years, fourteen years in the Indiana Department of Correction and two years on the Continuum of Sanctions program through the Community Justice Center.

[8] Hite now appeals.

# Discussion and Decision

[9] Hite raises two issues on appeal. First, he contends that his convictions on Counts I and VI constitute double jeopardy. He also contends that his sentence violates Indiana Code section 35-50-1-2.

# I. Double Jeopardy

Hite argues that his convictions for domestic battery resulting in serious bodily injury and battery resulting in bodily injury on a person under fourteen years old constitute double jeopardy under Indiana's actual-evidence test. Whether a defendant's convictions subjected him to double jeopardy is a question of law that we review de novo. *Wood v. State*, 999 N.E.2d 1054, 1065 (Ind. Ct. App. 2013), *trans. denied*. To find a double-jeopardy violation under the actual-evidence test "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Richardson v. State*, 717 N.E.2d 32, 53 (Ind. 1999).

Hite contends that his convictions for Counts I and VII were based on a single act—"the battery against [Elisha], which resulted in the unintended injury to the child [K.E.]"—and violated Indiana's actual-evidence test because "the evidence presented failed to establish separate and distinct facts to support convictions for both the battery against [Elisha] and the battery against [K.E.]." Appellant's Br. p. 9. While Elisha was holding K.E., Hite struck Elisha causing her knees to buckle and lose consciousness. When she awoke, she was lying on the kitchen floor, her front teeth felt loose, and K.E. had a large mark on her forehead that was not there before. Hite's single punch caused injury to multiple victims—Elisha and K.E. Hite points out that another panel of this Court recently held that a defendant cannot be convicted of two counts of battery based on a single act that resulted in multiple victims being injured and

that the convictions constituted double jeopardy under the actual-evidence test. *See Thompson v. State*, 82 N.E.3d 376 (Ind. Ct. App. 2017), *reh'g denied, trans. denied.* But our Supreme Court has made clear that multiple convictions based on a single criminal act do not violate the actual-evidence test when there are multiple victims. *Bald v. State*, 766 N.E.2d 1170, 1172 (Ind. 2002) (affirming arson and felony-murder convictions based on one fire but involving multiple victims). Hite's entire actual-evidence argument is that his convictions were based on a single punch, and he does not address the fact that there were multiple victims. We see no reason to distinguish Hite's case from the Supreme Court's holding in *Bald* and conclude that Hite's convictions do not violate Indiana's actual-evidence test.

## II. Sentencing

[12] Hite also argues, and the State concedes, that his sentence violates the maximum sentence authorized by Indiana Code section 35-50-1-2, which provides guidelines on consecutive and concurrent sentences. Except for "crimes of violence," the total of the consecutive terms of imprisonment a defendant can receive for a Level 5 felony, arising out of a single episode of criminal conduct, is seven years. Ind. Code § 35-50-1-2(c)(2), (d)(2). This limitation does not include sentencing for a habitual-offender enhancement. *Id.* at (c)(2).

[13] Hite was sentenced to an aggregate term of sixteen years, which included four years for the habitual-offender enhancement. But, as the State concedes, Hite's

convictions were based on a single episode of criminal conduct and were not "crimes of violence" as defined by our statute.[2] Because the most serious crime for which Hite was sentenced is a Level 5 felony, the total of the consecutive terms of imprisonment may not exceed seven years. I.C. § 35-50-1-2(d)(2). The jury found that Hite was a habitual offender, so the trial court can (and did) enhance his sentence anywhere from two to six years. *See* I.C. § 35-50-2-8(i)(2). In accordance with the State's recommendation, we remand for the court to enter a sentencing order that complies with Indiana Code sections 35-50-1-2 and 35-50-2-8.

Affirmed in part and remanded in part.

Pyle, J., and Barnes, Sr. J., concur.

---

[2] Effective July 1, 2018, Level 5 felony battery is now considered a "crime of violence." I.C. § 35-50-1-2(a)(6)(D); P.L. 80-2018, § 4.